El Juez Asociado Sr. Franco Soto no intervino en la vista de este caso.

---

González, Demandante y Apelado. *v.* Concejo de Administración de Aguada, Demandado y Apelante.

Apelación procedente de la Corte de Distrito de Aguadilla en recurso de *certiorari.*

No. 2410.—Resuelto en abril 25, 1922.

*Certiorari*—Cuestiones Levantadas por Primera Vez en Apelación.—La regla general de que no serán consideradas por la corte de apelación las cuestiones levantadas por primera vez en apelación, es aplicable al procedimiento de *certiorari.*

Id.—Contribuyentes—Derecho a Impedir la Indebida Asignación de Fondos Públicos—*Injuntion*—Corporaciones.—Está bien establecido que los contribuyentes, ya sean personas naturales o corporaciones, tienen derecho a impedir mediante demanda de *injunction* u otro procedimiento legal adecuado, la indebida asignación de fondos públicos por los actos no autorizados o *ultra vires* de funcionarios públicos, si no existe estatuto que designe algún funcionario en particular en cuyo nombre la acción debe establecerse.

Los hechos están expresados en la opinión.

Abogados del apelante: *Sres. E. González Mena, García Méndez & García Méndez y J. Valldejuli.*

Abogados del apelado: *Sres. A. Arroyo Rivera e I. Soldevila.*

El Juez Asociado Sr. Hutchison emitió la opinión del tribunal.

El peticionario acudió a la corte de distrito en solicitud de un auto de *certiorari*, fundando su derecho en las siguientes alegaciones:

"I. Que es mayor de edad, residente del Municipio de Aguada, miembro de la asamblea municipal de dicho pueblo, y contribuyente por bienes raíces en dicha municipalidad.

"II. Que el día 13 de septiembre de 1920, el Concejo de Administración de Aguada, con infracción de la ley, aprobó un presupuesto

supletorio por la cantidad de $8,345.62, que importa el balance existente en efectivo en junio 30 último.

"III. Que dicho presupuesto supletorio fué confeccionado incluyendo la suma de $351.88 que corresponde a depósitos y fianzas, la cual suma no debió haberse tomado en consideración para la formación de dicho presupuesto supletorio, porque este dinero no es propiedad del municipio, sino de los acreedores del mismo por tales conceptos.

"IV. Que en dicho presupuesto supletorio se incluye asimismo la suma de $5,811.60, que corresponde a fondos escolares, y que por tanto no podían entrar a formar parte de dicho presupuesto supletorio.

"V. Que sobre la ilegalidad de dicha ordenanza del presupuesto supletorio se le llamó la atención a dicho concejo de administración, de parte del Auditor de Puerto Rico, y por conducto del Secretario-Auditor del Municipio .de Aguada, a pesar de lo cual dicho concejo de administración aprobó el día 14 de octubre en curso una ordenanza, declarando su intención de no enmendar ni modificar dicho presupuesto supletorio.

"VI. Que el referido concejo de administración celebró una sesión extraordinaria en septiembre 9, 1920, con el fin de considerar una oferta hecha por Anastacio Ramos para la compra de una casa con solar que el día anterior le había vendido Teodoro Badillo, Comisionado de Servicio Público; siendo dicha sesión nula por no haber precedido la convocatoria adecuada al efecto.

"VII. Que dicho concejo de Administración celebró otra sesión extraordinaria en septiembre 13, para la cual los miembros del mismo fueron citados verbalmente y sin autoridad de ley, habiendo dicho concejo de administración aprobado en esta sesión una ordenanza autorizando la compra de la referida casa por $5,000, y habiéndose expedido el cheque No. 83 de la Municipalidad de Aguada por $5,000, a favor del referido Anastacio Ramos.

"VIII. Que las ordenanzas relacionadas en las alegaciones anteriores, inclusive la ordenanza votando el referido presupuesto supletorio, son nulas y contrarias a la ley y con ellas se causa al demandante, como contribuyente de dicho municipio, graves e irreparables daños, careciendo, como carece el demandante, de cualquier otro recurso legal adecuado y rápido que presentar ante esta corte, con el fin de que se declaren nulas e inexistentes las referidas ordenanzas."

La parte dispositiva de la sentencia es como sigue:

"Y la corte, después de considerar debidamente el presente recurso de *certiorari*, con vista de los documentos acompañados a la contestación o *return* del demandado, y por las razones consignadas en la relación del caso y opinión que se hace formar parte de esta sentencia.

"Declara con lugar la solicitud de *certiorari* presentada por Eugenio González contra el Concejo de Administración de Aguada, y en su consecuencia, anular, como anula, el presupuesto supletorio por la cantidad de $8,345.62, y la ordenanza aprobatoria del mismo adoptada en la sesión extraordinaria de dicho concejo celebrada el 18 de agosto, 1920, y anular, como anula también, la ordenanza de dicho concejo votada en sesión extraordinaria que tuvo lugar el día 13 de septiembre, 1920, y por la que se autorizó la compra a Anastacio Ramos, de una casa y terreno por la suma de $5,000 con cargo a dicho presupuesto supletorio; con las costas al demandado. El secretario comunicará esta sentencia con copia de la relación del caso y opinión en que se funda, al Concejo de Administración de Aguada, para su conocimiento y efectos consiguientes."

Los siguientes son los errores que alega el apelante fueron cometidos por la corte sentenciadora, a saber:

"Que la corte sentenciadora cometió error al sustituir el nombre del Licenciado José J. Acosta, Fiscal del Distrito, por el del Licenciado Miguel Guerra Mondragón, para que actuara en el presente caso como abogado del demandante.

"Que la corte sentenciadora erró al declarar sin lugar la excepción previa de falta de jurisdicción.

"Que la corte sentenciadora erró al declarar sin lugar la moción de sobreseimiento presentada por la demandada.

"Que la sentencia es contraria a la prueba.

"Que la sentencia es contraria a derecho."

En apoyo del primer señalamiento de error el apelante sostiene lo siguiente:

"De la faz de la solicitud de *certiorari*, resulta que el demandante no comparece en su simple carácter de contribuyente del Municipio de Aguada; y por el contrario alega que es miembro de la asamblea municipal de dicho pueblo. En tales circunstancias, no es posible que esté representado ante los Tribunales Insulares por persona alguna que no sea un representante de El Pueblo de Puerto

Rico. La sustitución del Sr. Acosta no debió haberse decretado nunca, por ser él el único y legítimo representante en Aguadilla que hubiera podido actuar como abogado del peticionario.''

La mera enunciación de una cuestión que por su faz no es evidente no requiere detenida consideración.

Suponemos que el segundo señalamiento se refiere a un incidente del cual tomó nota el taquígrafo de donde consta la presentación de una excepción previa al efecto de que la corte carecía de jurisdicción. Al ser declarada sin lugar esta alegada excepción previa, el abogado del demandado dijo al parecer lo siguiente:

''Dmdo.—Los abogados que representan a los demandados toman excepción de la resolución de la corte y fundan la excepción primero: en que en Puerto Rico existe una Ley de *Certiorari* y que si se ha querido extender un auto de tal procedimiento o recurso especial ha debido enmendarse expresamente dicha ley.—Segundo:—Porque el acto del Concejo de Administración del pueblo de Aguada, aprobando un presupuesto supletorio, es un acto puramente legislativo y las cortes de distrito del país ni ninguna corte tiene jurisdicción sobre actos legislativos de dicho cuerpo jurídico, por ser ese cuerpo jurídico municipal una prolongación de la Asamblea Legislativa de Puerto Rico que es el único juez de sus propios actos.''

El razonamiento bajo el segundo señalamiento en poco o nada amplía esta vaga declaración. La teoría es según parece que la ley reciente que confiere a las cortes de distrito jurisdicción para revisar por *certiorari* los actos administrativos y legislativos municipales es nula por equivaler a una enmienda a la vigente Ley de *Certiorari,* por no cumplir con las disposiciones de la Ley Orgánica en materia de enmiendas. Toda vez que no se citan autoridades ni se da ninguna razón muy persuasiva para sostener este parecer, no es necesario que hagamos ahora una investigación personal de la cuestión que de tal modo trató de levantarse.

La moción de sobreseimiento a la cual se hace referencia en el tercer señalamiento impugna la jurisdicción de la corte y la suficiencia de la petición por los siguientes fundamentos:

"A. Porque no asegura o afirma que exista error en el procedimiento y porque el hecho de usar de las partidas, unas de otras, no es error en el procedimiento, sino autoridad ejercida más allá de la que tiene dicho concejo de administración. Los procedimientos pueden ser correctos aunque el fin en el cual resulten, no lo sea. 17 D. P. R. 947.—B. Porque no alega que exista en el curso ordinario de la ley otro recurso rápido y eficaz para hacer valer los derechos del peticionario. 17 D. P. R. 948.—C. Porque no basta afirmar que una resolución judicial o actuación cualquiera es errónea, sino que es preciso demostrarlo *prima facie* de la petición de *certiorari*. La presunción está a favor de la legalidad de los procedimientos. 17 D. P. R. 948.—D. Porque el auto no se da para corregir meras informalidades de procedimientos que no tiendan a lesionar los derechos de las partes. 17 D. P. R. 952.—E. Porque el peticionario tiene que alegar que dicho Concejo de Administración de Aguada, al hacer las transferencias de que la petición trata, ejerció funciones judiciales. *Lewis v. Bishop,* 19 Wash. 312, 53 Pac. 165, *Sutherland Code Pleading & Practice,* Vol. II, pág. 1997; tiene además que alegar en dicha petición que el concejo de administración se excedió en su jurisdicción. *Sutherland Code P. & P.,* Vol. II, pág. 1999.—F. Al hacer la alegación de que el concejo de administración ejerció funciones judiciales, tiene que afirmar que no tiene medios para hacer valer sus derechos. *Sutherland Code P. & P.,* pág. 200, Vol. II.—G. Porque no alega que tal petición la hace de buena fe y no para entorpecer cualquier procedimiento o actuación. *Cunningham v. La Crosse Packet Company,* 10 Minn. 297, *Sutherland Code P. & P.,* Vol. II, pág. 2005.—H. Porque la petición no incluye copia de los autos o procedimientos que se tratan de corregir, y por eso debe ser denegada. *State v. District Court,* 26 Mont. 224, 67 Pac. 114, y 68 Pac. 470, *Sutherland Code P. & P.,* Vol. II, pág. 2005, 2013.—I. Porque no alega ningún motivo para tal revisión. *Spelling sobre Injunction and Other Extraordinary Remedies,* Vol. II, página 1763.—J. Porque no alega que los actos legislativos del Concejo de Administración de Aguada, haya perjudicado los derechos constitucionales del querellante, o sean contrarios a la Ley Orgánica, o Leyes de Puerto Rico.—K. Porque según aparece de la misma petición el presupuesto supletorio fué aprobado en 18 de agosto 1920, alegando que una partida perteneciente a fondos escolares fué incluída en el mismo, y no procede el *certiorari*, porque la ley dispone que todos los fondos sobrantes en junio 30 de cada año, se considerarán fondos municipales y podrán usarse en presupuesto supletorios."

La petición, *supra,* habla por sí. En tanto se considere que no contiene los particulares cuya omisión se alega, estamos satisfechos con decir que los casos citados por el apelante o giran sobre requisitos estatutorios no prescritos en nuestra ley, o por otras razones que son de igual modo claras no tienen aplicación.

La única nueva alegación en el alegato sobre este aspecto del caso se funda en la siguiente cita:

"* * * el mero hecho de que el peticionario es un contribuyente y residente de la comunidad para que pueda ser afectado por los procedimientos, no es por sí suficiente para conferirle un derecho mediante *certiorari* a revisar los procedimientos de los comisionados; su interés debe ser mayor que ese, o por lo menos el daño de que se queja debe ser peculiar a él." 5 R. C. L., p. 256, sec. 8.

Tal vez sería bastante contestación a esto decir que la cuestión no fué promovida en la corte inferior.

"Las reglas generales que regulan todas las apelaciones y autos de error relativas a la reserva de cuestiones para ser revisadas mediante objeciones, excepciones, etc., en la corte inferior son aplicables; y las resoluciones sobre cuestiones que no han sido objetadas en el procedimiento de *certiorari* o las resoluciones a las cuales no se hizo objeción ni se tomaron excepciones no pueden alegarse o ser materia de objeción por primera vez en la corte de apelación." 11 C. J., p. 218, sec. 402.

Una referencia a la anterior sentencia del texto de *Ruling Case Law* citado por el apelante, será bastante para demostrar que los "comisionados" referidos son "comisionados de carreteras" ocupados "en trazar una carretera." Asimismo en la nota citada en *Ruling Case Law* en apoyo del texto que cita el apelante, Ann. Cas. 1913 C. 910, encontramos lo siguiente:

"Un ciudadano y contribuyente cuyos intereses son afectados perjudicialmente por la actuación de una junta o comisión que carece de facultades, o en exceso de sus poderes, tiene derecho a revisar sus procedimientos mediante *certiorari,* siempre que la junta o comisión

estuviera ejercitando una función judicial y no legislativa.  \* \* \*
Y se ha declarado que un residente y contribuyente de una ciudad
tiene derecho a solicitar un *certiorari* para probar la validez de una
ordenanza municipal.''

Y en la misma nota, página 890, encontramos lo siguiente:

''Está bien establecido que los contribuyentes, ya sean personas
naturales o corporaciones, tienen derecho a impedir mediante de-
manda de *injunction* u otro procedimiento legal adecuado, la inde-
bida asignación de fondos públicos por los actos no autorizados o
*ultra vires* de funcionarios públicos, si no existe estatuto que designe
algún funcionario en particular en cuyo nombre la acción debe esta-
blecerse para beneficio de todos los contribuyentes.''

Véase también a ''Dillon sobre Corporaciones Municipa-
les,'' tomo IV, p. 2763, sec. 1579; p. 2767, sec. 1581; p.
2770, sec. 1584; p. 2781, sec. 1586; p. 2783, sec. 1587; p.
2792, sec. 1592, y p. 2795, sec. 1593.

No creemos que sea necesario discutir en sus pormenores
la cuestión que se sugiere en el cuarto señalamiento de error.
En el alegato del apelante no se establece de modo claro
un error tan manifiesto que exija la revocación de la sen-
tencia apelada, y esta obligación incumbe al apelante y no
a esta corte.

Al argumentar el apelante sobre el quinto señalamiento
de error y después de lo que al parecer es una cita·copiosa
de la opinión del juez sentenciador, se expresa en los si-
guientes términos:

''Aceptamos como cierta la brillante exposición de la corte sen-
tenciadora excepto en lo que se refiere a la aplicación que de dichos
preceptos hace a los hechos específicos de este caso.  Es cierto que
el artículo 71 de la vigente Ley Municipal dispone que la Ley Es-
colar Compilada ha quedado en vigor en cuanto no se oponga a la
autonomía administrativa municipal; es cierto que la Ley Escolar
no está en conflicto con la Ley Municipal a este respecto, y aquella
establece en su artículo 65 que los fondos que ingresen en la Teso-
rería de cada municipio por concepto de la contribución escolar que
impone el artículo 63 de dicha ley, sólo podrán emplearse en aten-

ciones escolares; es cierto que nuestra Ley Orgánica dispone que todo dinero que se recaude por contribución impuesta o fijada para un fin especial será considerada como fondo especial en la Tesorería y desembolsada para dicho fin únicamente, a no ser que medie la aprobación del Presidente de los Estados Unidos; y es cierto además, que la contribución escolar es una para un fin especial; pero lo que nosotros no podemos aceptar porque no aparece de ningún sitio, es que los fondos o parte de ellos que constituyen el presupuesto supletorio del Municipio de Aguada, cuya nulidad se pretende, sean el producto directo o indirecto de la Ley de Contribución Especial, *School Tax.*—Si de alguna parte se desprendiera el hecho de que tales fondos son el resultado o producto de la contribución escolar, seríamos los primeros en aceptar que el Municipio de Aguada no tenía facultad y había obrado ilegalmente al incluirles en el presupuesto supletorio.''

El record taquigráfico contiene copias certificadas de las siguientes cartas:

''Septiembre 17, 1920.—Sr. Luis R. García, Secretario-Auditor, Aguada, P. R.—Señor:—Acuso recibo a su comunicación del 13 del corriente, con la que acompaña copia del presupuesto supletorio aprobado por el concejo de administración de esa recientemente, para regir durante el corriente año económico, y el cual encontramos defectuoso por los siguientes motivos:—1. Dicho presupuesto supletorio ha sido formulado por el montante de $8,345.62, o sea el importe total del balance en caja en junio 30 de 1920. Esta suma incluye $351.88 que corresponden a depósitos y fianzas. Los depósitos y fianzas no deben tomarse en consideración para la formación de presupuestos supletorios, puesto que este dinero no es propiedad del municipio, pues en cualquier momento sus dueños pueden reclamar y exigir su devolución.—2. La cantidad total disponible para la formación del presupuesto supletorio es $7,993.74, y de ésta deben deducirse las deudas que hubieren quedado pendientes de pago en junio 30 con cargo al presupuesto y para las cuales hubiere crédito disponible en las partidas.—3. Dicha suma de $7,993.74 está distribuída en $5,811.60 que corresponden a fondos escolares y $2,182.14 a fondos ordinarios. Por consiguiente, el importe total del sobrante de fondos escolares, de acuerdo con la Ley Municipal debe invertirse exclusivamente en atenciones del departamento municipal de instrucción, y el sobrante de fondos ordinarios puede invertirse en atenciones de los demás de-

partamentos municipales, o en atenciones del departamento municipal de instrucción si así se consigna en el presupuesto. Sírvase, por consiguiente, no dar efecto a dicho presupuesto supletorio en los libros de contabilidad, notificando de esta carta al concejo de administración, para que a la brevedad posible pueda aprobar un nuevo presupuesto supletorio en debida forma, remitiendo copia del mismo a esta oficina. De Ud. atentamente, J. W. Bonner, Auditor de Puerto Rico.''

''Septiembre 22, 1920.—Sr. Luis R. García, Secretario-Auditor, Aguada, P. R.—Señor:—Acuso recibo a su comunicación del 21 del corriente, y en contestación a la misma deseo informarle que si en el presupuesto figura la partida de 'Depósitos y Fianzas' con un crédito de $151.88 ésto se hizo indebidamente, y por consiguiente dicha cantidad debe la asamblea, por medio de ordenanza, transferirla a cualquiera de las otras partidas de fondos ordinarios del presupuesto, quedando siempre incluída en el balance en caja en junio 30 la suma de $351.88 como balance en esa fecha en el fondo de depósitos y fianzas. En lo que respecta al balance en caja en fondos escolares en junio 30, paso a darle la siguiente información por la cual verá usted que éste montaba a la suma de $5,811.60, partiendo de la distribución del balance en caja en abril 1, 1920, que fué comprobado por un Investigador de Cuentas de esta oficina, según investigación que se estaba practicando en aquella época y tomando en consideración los ingresos y egresos habidos subsiguientemente:

| | Fondos Ordinarios. | Fondos Escolares. | Depósitos y Fianzas. | Total. |
|---|---|---|---|---|
| Bal. Abril 1/20 | 1,304.41 | 4,900.16 | 351.88 | 6,554.45 |
| Ingresos: | | | | |
| Abril | 5,022.21 | 2,290.79 | | 7,313.00 |
| Mayo | 460.98 | 197.48 | | 658.46 |
| Junio | 304.47 | 58.90 | | 363.37 |
| Total | 7,090.07 | 7,447.33 | 351.88 | 14,889.28 |
| Egresos: | | | | |
| Abril | 1,299.47 | 695.75 | | 1,995.22 |
| Mayo | 1,444.49 | 362.83 | | 1,807.32 |
| Junio | 2,163.97 | 577.15 | | 2,741.12 |
| Total | 4,907.93 | 1,635.73 | 351.88 | 6,543.66 |
| Bal. Jun. 30/20 | 2,182.14 | 5,811.60 | 351.88 | 8,345.62 |

"Esta oficina ha sido informada de que el concejo de administración en sesión celebrada el 13 de septiembre, 1920, acordó comprar una casa para hospital municipal por la suma de $5,000, con cargo al presupuesto supletorio, y con respecto a esta compra le agradeceré se sirva informarme si ya el pago ha sido efectuado; en caso afirmativo, sírvase informarme la fecha y número del libramiento y cheque, su importe y el nombre de la persona a la cual éstos fueron expedidos. Asimismo sírvase remitirme copia de la ordenanza del concejo de administración autorizando la compra de dicha casa; una descripción en cuanto a la situación de la misma; y si la escritura de compraventa ya ha sido formalizada y debidamente registrada en el registro de la propiedad. Tan pronto el concejo de administración tome acción con respecto al presupuesto supletorio, sírvase notificarme sobre el particular. De Ud. atentamente, (firmado) J. W. Bonner, Auditor de Puerto Rico."

No se hace mención o referencia alguna a estas cartas en el alegato. La corte inferior estuvo según parece conforme con el criterio sustentado por el Auditor. Deducimos del alegato que el abogado del apelante disiente de la conclusión a que así se llegó. La "relación del caso" a que se refiere el juez sentenciador en su sentencia, *supra,* como que forma parte de la misma no se le hizo formar parte de la transcripción y nada sabemos del razonamiento que sirvió de base a la corte inferior para dictar su sentencia.

Se presume que es correcta la sentencia apelada y no existiendo un claro fundamento para su revocación, debe ser confirmada.

*Confirmada la sentencia apelada.*

Jueces concurrentes: Sres. Presidente del Toro y Asociados Wolf y Aldrey.

El Juez Asociado Sr. Franco Soto no intervino en la vista de este caso.